**E-FILED**
Wednesday, 06 March, 2013 01:42:25 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

TOM WALTER,

Plaintiff,

v.

DEERE AND COMPANY (JOHN DEERE HARVESTER WORKS), A Delaware Corporation,

Defendant.

Case No. 4:12-cv-04034-SLD-JAG

ORDER

Plaintiff Tom Walter brings this action against Defendant Deere & Company ("Deere") for allegedly failing to make him whole after an arbitrator ordered Deere to do so. Walter, who was represented by his Union during the arbitration, does not challenge the arbitration award, which was favorable, or his Union's representation before or during arbitration. Walter instead challenges the implementation of the arbitration award. In doing so, he argues that Deere failed to make him whole and that his Union failed to fairly represent him in making sure the award was implemented correctly.

Walter originally filed this action is state court. Thereafter, Deere removed the case to this Court. (ECF No. 1.) That same day, Deere moved to dismiss. (ECF No. 4.) The Court held a hearing on Deere's Motion to Dismiss on June 1, 2012. At the hearing, the Court granted the Motion to Dismiss and also granted Walter leave to amend. (6/01/2012 Minute Entry.) Walter timely filed an amended complaint. (ECF No. 9.) And Deere again moved to dismiss, which is the motion presently before the Court. (ECF No. 13.) As set forth below, the Court finds that

Walter's claim is barred by the statute of limitations. The Court therefore GRANTS [#13] Defendant's Motion to Dismiss and DISMISSES this case with prejudice.

## I. BACKGROUND

Walter filed this action after winning an arbitration award stating that Walter "shall be reinstated to the employment ***and made whole***." (Amended Complaint at p 2, ECF No. 9 (emphasis added).) Walter alleges that Deere did not make him entirely whole—Walter blames his Union representative for ineffectively representing Walter's interests by not negotiating a larger monetary payment. Specifically, Deere reinstated Walter and paid him a one-time lump net sum of $38,387.34 based on a gross of $90,652.76. (*Id.* at p 4.) Walter alleges that his gross payment should have been at least $109,644.13, resulting in an underpayment of at least $19,000. (*Id.* at p 5.)

The timeline of events is as follows:

- June 29, 2006: Walter was discharged from his employment. (Amended Complaint at p 5.)
- February 27 and 28, 2007: Per the Union's collective bargaining agreement, Walter and Deere participated in binding arbitration. (*Id.* at p 2.)
- March 16, 2007: Walter receives the arbitration award instructing Deere to make Walter whole—no other guidance or dollar amount is given in the award. (*Id.*)
- May 17, 2007: Walter is reinstated at his job. (*Id.* at p 4.)
- After March 16, 2007 but before early July 2007: The Union, acting on Walter's behalf, negotiated what it would take to make Walter whole. Walter alleges that the Union—specifically representative Mr. Hecker—never consulted or contacted

Walter during this time period. (*Id.* at p 2.) Walter then received a compensatory check six weeks after May 17, 2007. (*Id.* at p 4.)

- Fall 2009: Walter spoke to Mr. Hecker in person at the Union's Moline location. Walter alleges that he told Mr. Hecker that his payment from Deere was "grossly incorrect." Walter further alleges that Mr. Hecker "sternly cut [Walter's] explanation short and told him, 'The award is settled. There is nothing that can be done.' [Mr. Hecker] refused to speak about the matter further to [Walter]." (*Id.* at p 3.)
- March 2, 2012: Walter files suit in state court.

## II. WALTER'S ACTION IS TIME-BARRED

Walter's Amended Complaint asserts one cause of action: a hybrid § 301 claim. A hybrid § 301 claim alleges that the employer breached the collective bargaining agreement and that the union breached its duty of fair representation. To provide individual employees with recourse when a union breaches its duty of fair representation in a grievance or arbitration proceeding, an employee may bring suit against both the union and the employer, or one but not the other. *DelCostello v. Teamsters*, 462 US 151, 164-65 (1983). But regardless of whether the plaintiff sues one or both parties, "the case he must prove is the same." *Id.* "To prevail in such a suit, employees must demonstrate both that the employer violated a collective bargaining agreement and that the union breached its duty of fair representation in the course of failing to hold the employer to its promise." *Copeland v. Penske Logistics LLC*, 675 F.3d 1040, 1042 (7th Cir. 2012).

The statute of limitations period for a hybrid § 301 claim is six months. *DelCostello*, 462 US at 164-65. A hybrid § 301 "cause of action accrues from the time a final decision on a

plaintiff's grievance has been made or from the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance." *Richards v. Local 134, Int'l Bhd. of Elec. Workers*, 790 F.2d 633, 636 (7th Cir. 1986).

Walter's claim is a little bit different than most hybrid § 301 claims because he does not allege that the Union breached its duty of fair representation before or during arbitration—Walter takes issue with the Union's acts after the arbitration.[1] And as such, it is unclear at what point the statute of limitations began to run (e.g., when he received the compensatory check or when Mr. Hecker made clear that no further action would be taken). The Court does not decide that issue because Walter's claim fails under any analysis.[2]

Walter argues that the statute of limitations never began to run because the finality of the Union decision on the arbitration award either never occurred or was hidden from him. In effect, Walter would have the Court postpone the running of the statute of limitations indefinitely until actual written notice that the Arbitration Award was settled was given to him. Consistent with the strong federal policy favoring the prompt resolution of labor disputes, the Seventh Circuit has rejected this argument:

> We recognize, of course, that the Union should be encouraged to promptly notify the employee of its decision to pursue, or not to pursue, his or her claim and that this prompt action will help preserve any legal remedies available to the employee. To say, however, that the running of the statute of limitations will be postponed indefinitely until actual notification is received from the Union or the employer, would be contrary to the policy of prompt resolution. Lack of notification would leave claims unresolved indefinitely and leave the procedure open to all of the vices which statutes of limitations were intended to eliminate.

---

[1] The Court is not aware of any factually similar cases, but believes it appropriate to allow a hybrid § 301 claim to be alleged on these facts.

[2] The Court also notes that even if it were to construe Walter's claim as arising under the Federal Arbitration Act, his claim would still be time barred. *See* 9 U.S.C. § 9 (one year statute of limitations).

*Metz v. Tootsie Roll Indust., Inc.*, 715 F.2d 299, 304 (7th Cir. 1983). Walter is not entitled "to sit back and claim lack of notice." *See id.* In *Metz*, seven months of union inactivity passed before the six-month statute of limitations period—meaning thirteen months had passed between the grievance and filing of the lawsuit. The Seventh Circuit held that the plaintiff should have discovered the union inactivity at some point prior to the six month statute of limitations period and therefore held that the plaintiff's action was time-barred.

Walter filed this lawsuit on March 2, 2012. That means he waited over two years from receiving his compensatory payment to even inform the union of his complaint and over four and one-half years before filing suit in court. In Fall 2009, Walter was obviously aware of his complaint because he expressed it to Mr. Hecker. In response, Walter was told "[t]he award is settled" and "[t]here is nothing that can be done." (Amended Complaint at p 3.) Further, Walter alleges that Mr. Hecker was "so hostile" that Walter "could not hope to obtain a fair hearing on his claim." (*Id.* at p 4.) Even assuming the Union inactivity did not begin until Fall 2009, this period of at least 30 months strongly supports the conclusion that Walter knew, or at least should have known, that the Union was not taking any action on his complaint.

The critical issue at this stage in the litigation is whether Walter has pled himself out of court. Even giving Walter the benefit of the doubt that he did not know about the conduct giving rise to his hybrid § 301 claim until Mr. Hecker made it clear to him in Fall 2009, he still waited over two years to file suit. These allegations, plus the simple fact that Walter received a compensatory payment around July 2007, demonstrate that Walter should have known that both Deere and his Union considered the issue concluded. And he should have known it at least two years before he filed suit on March 2, 2012. On these facts, the Court finds that Walter has

admitted "all the ingredients" of an impenetrable statute of limitations defense. *See Xechem, Inc. v. Bristol-Meyers Squibb, Co.*, 372 F.3d 899, 901 (7th Cir. 2004).

## III. CONCLUSION

The Court finds that Walter's claim is time-barred. The Court therefore GRANTS [#13] Defendant's Motion to Dismiss and DISMISSES this case with prejudice.

Entered this 6th day of March, 2013.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE